IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DR. GENE H. CHANG,

                Plaintiff,                Case No. 3:05 CV 7116

-vs-

                                            <u>MEMORANDUM OPINION</u>

THE UNIVERSITY OF TOLEDO,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant University of Toledo's motion for summary judgment (Doc. 35). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

Dr. Gene H. Chang ("Plaintiff") was hired by the University of Toledo in 1989 as an assistant professor in the Economics Department of the College of Arts and Sciences. In 1995 he was promoted to associate professor and granted tenure. He was promoted to full professor in 2003. During the period of time relevant to Plaintiff's complaint, the chair of the economics department was Dr. Michael Dowd and the dean of the college of arts and sciences was Dr. David Stern.

Each fall, faculty members are evaluated for their performance during the preceding academic year. The departments select committee members who evaluate faculty based on teaching, professional activity (research), and service, each of which is defined further in the Department's by-laws. The by-laws and the Collective Bargaining Agreement ("CBA") between the University and the American Association of University Professors, University of Toledo

Chapter, set out procedures for the evaluation of faculty. After a faculty member submits a workload agreement for the approaching year, the evaluation committee considers the faculty member's Annual Report of Professional Activity and student teaching evaluations. The evaluation committee recommends a merit score for each faculty member that factors in teaching, research, and service. If the department chair disagrees with a committee's score, a reconciliation process ensues that results in a final score.

Plaintiff did not submit a workload agreement form. The Department, after seeking advice from the University and the Union, weighted Dr. Chang's evaluation as follows: teaching 40%, research 40%, and service 20%. He and another professor, Nicole Yurgin, received the lowest average score of the six faculty members evaluated in the Economics Department. In the reconciliation process, two of the faculty members' scores were adjusted upward, and four, including Plaintiff's, were adjusted downward.

Plaintiff's teaching score was adversely impacted by the committee and Chair's consideration of an incident involving Plaintiff's spring 2003 Economic Development course. University policy sets specific requirements for the use of computers in teaching and assignments in courses designated as "distance learning" courses. The department chair is charged with designating courses as web-assisted distance learning courses. The University's policy is that courses that are web-assisted must be advertised as such in advance of registration, because students who have less developed computer skills or do not own computers should be given notice of the level of computer use in the courses for which they register. Plaintiff taught his course as a web-assisted course despite it not being labeled as such. After Dr. Dowd received complaints from students, both individually and at one point as a group, he approached Plaintiff and

2

instructed him to teach the course as a non web-assisted course in compliance with University and Department policy. Plaintiff did not adjust his course, and at least one student continued to complain to Dr. Dowd. Plaintiff's actions were considered by his evaluators to indicate disregard for the distance learning policy and for students' rights.

It should also be noted that Plaintiff had a particularly contentious relationship with Dr. Dowd. They had apparently confronted each other on several occasions, the most heated of which appears to have ended with Dr. Dowd using an expletive in Plaintiff's office. The two were at odds for an extended period of time in what appear to have been professional and personal differences. However, Dr. Dowd never used discriminatory or otherwise racial language directed at Plaintiff. Dean Stern reviewed the situation on more than one occasion and observed both the presence of personal animosity and the lack of any discriminatory words or actions.

After Plaintiff's low evaluation scores, his compensation was reduced accordingly. He filed a complaint with, and received a right to sue letter from, the EEOC. Plaintiff then timely filed this suit alleging discrimination based on his race (Asian) and national origin (Chinese).

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

    **A. *McDonnell Douglas* burden-shifting test for employment discrimination claims**

It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), set forth the order for the presentation of proof in a Title VII case, which first requires a plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination by indirect or circumstantial evidence.

Direct evidence is found, for instance, where an employer's policy is discriminatory on its face, *see Trans World Airlines, Inc., v. Thurston*, 469 U.S. 111, 121 (1985), or where a corporate decision-maker expressly states a desire to remove employees in the protected group, *see LaPointe v. United Autoworkers Local* 600, 8 F.3d 376, 379-80 (6th Cir. 1993). In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even had it not been motivated by

5

impermissible discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality opinion); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

Where no direct evidence of discrimination exists, an employee can establish her prima facie case by indirect or circumstantial evidence. In that instance, she must show (1) that she is a member of the protected class; (2) that she was denied opportunities or experienced an adverse employment decision; (3) that she was otherwise qualified; and (4) that other individuals outside the protected class received more favorable treatment. *See Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 53 (6th Cir. 1990); *Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989). Having met that burden, a presumption arises to the effect that the employer unlawfully discriminated against the plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the less favorable treatment. *See McDonnell Douglas*, 411 U.S. at 802.

Where the defendant sets forth, through the introduction of admissible evidence, that the actions were taken for a legitimate nondiscriminatory reason, it becomes plaintiff's burden to prove by a preponderance of the evidence that the reason was actually a pretext for discrimination. To establish pretext, a plaintiff may meet his or her burden by showing that the adverse employment action: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). In circumstantial evidence cases, the burden of persuasion remains at all times with the employee. *Gagné*, 881 F.2d at 315-16.

6

It is also unlawful under Ohio law "[f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that the coverage of § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context. Thus, evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be demonstrated. *See Genaro v. Central Transp., Inc*., 84 Ohio St.3d 293 (Ohio 1999); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981); *see also, Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609-10 (1991).

**B. Plaintiff cannot show discrimination by Defendant**

Here, Plaintiff has shown no evidence of direct discrimination. There is no evidence that Dr. Dowd or anyone else ever used language offensive towards Plaintiff's race or national origin, or that Plaintiff's race or national origin were ever considered as factors in his evaluation. Plaintiff argues that a later rejection of a travel request by Dr. Chang to China is direct evidence of discrimination, as are recent changes to the By-laws that changed when and with whom the committee should share comments received about faculty teaching as well as the formula by which they were evaluated. The By-laws changes were apparently recommended in reaction to Dr. Dowd's desire to prevent brutal depositions such as the one he underwent in the course of litigation with Dr. Chang. The denial of travel was denied because Dr. Chang requested one

7

semester for each of three successive years, a time greater than that allowed by the CBA. Both these actions may have been directed at Dr. Chang, but there is certainly no reason to find that these actions were motivated by racial animus. In other words, there is no evidence that Dr. Chang's race played a motivating factor in either of these decisions by those who made them. Therefore, no direct evidence of discrimination exists.

Further, Plaintiff can neither establish a prima facie case, nor rebut Defendant's legitimate, non-discriminatory reasons for reducing his pay. Plaintiff's prima facie case falters at the fourth prong; he cannot show that a similarly-situated individual outside of the protected class was treated more favorable than he. The only potential comparison is to Nicole Yurgin, another Economics professor who is outside of Plaintiff's protected race and national origin class, and who received similarly low marks on her evaluation. However, Plaintiff never alleges that Yurgin's pay was not reduced in similar proportion to his own. In other words, he does not establish that Yurgin, even if similarly-situated, was treated better than was he.

Finally, Plaintiff has set forth no evidence that the Defendant's reasons for reducing Plaintiff's pay were mere pretext for discriminatory action. Defendant's system for the evaluation of faculty members, within both the College and the Department, is written out in the By-laws and CBA. It was followed by the evaluation committee and overseen by both Dr. Dowd and Dean Stern. Plaintiff's arguments basically accuse the University of having an evaluation procedure that is too subjective and that systematically discriminated against him for several years, culminating in the most recent reduction in pay. In fact, Dr. Chang proposes his own system of how the University should have evaluated him and concludes that he deserves more than he

8

received. He also asserts that the Department has historically treated minority faculty members worse than non-minority faculty members.

While the evaluation policy does contain subjective elements, it does so in a fashion that the University has determined is fair and effective and that is combined with objective factors and student input. This Court will not lightly second-guess an employer's evaluation process. This Circuit has stated with precision the principles that apply in cases such as this:

> Whether Browning [the plaintiff] agrees with Courtney's scoring method, or whether he believes that he was more qualified for the position that Rhodus ultimately filled, is irrelevant to the age-discrimination inquiry – what matters is Courtney's perception of Browning's qualifications. *Lomax v. Sears, Roebuck, & Co.*, 2000 WL 1888715, at *4, No. 99-6589, 2000 U.S.App. LEXIS 33884, at *11 (6th Cir. Dec. 19, 2000) (unpublished) (holding that the plaintiff's assessment of his own qualifications was irrelevant to the discrimination inquiry). Not only has this court afforded great flexibility to employers when selecting management personnel, *see* [*Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987)], but it has explicitly held that "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir.1996) (holding that the employee's subjective belief as to why she was terminated fails to satisfy the summary judgment standard).

*Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006). Like the plaintiff in *Browning*, Dr. Chang has not shown "that [Defendant] used subjective criteria to mask a discriminatory motive, and without any allegations of a discriminatory intent, [he] cannot meet his burden of persuasion on this issue." *Id.* Plaintiff proposes a different evaluation method that he believes would be more fair than the current one. However, Plaintiff does not make a convincing argument that the current system discriminates on an impermissible basis. While Dr. Chang has attempted to present extensive data regarding the undervaluation of his teaching, research, and service vis-a-vis other faculty members, his argument amounts to an alternate proposal for the Defendant's

9

faculty evaluation process – not a showing of discriminatory intent or pretext. Therefore, the Court has no basis or occasion to second-guess the Defendant's faculty evaluation process.

**IV. Conclusion**

For the reasons enumerated herein, Defendant's motion for summary judgment (Doc. 35) is hereby granted. Case dismissed.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE